IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

EMILY M. FRANZEN,

                              Plaintiff,                           OPINION AND ORDER

        v.
                                                                  20-cv-722-wmc

KILOLO KIJAKAZI, Acting Commissioner
for Social Security,

                              Defendant.

        Pursuant to 42 U.S.C. § 405(g), plaintiff Emily M. Franzen seeks judicial review of

the Social Security Commissioner's final determination upholding an opinion that she was

not disabled.  On appeal to this court, plaintiff maintains that Administrative Law Judge

("ALJ") Deborah E. Ellis erred in crafting a residual functional capacity ("RFC") and

specifically challenges the ALJ's (1) treatment of Franzen's need for a rolling walker; (2)

consideration of the state agency medical consultants; and (3) evaluation of Franzen's

subjective statements.  For the reasons that follow, the court will reverse the denial of

benefits and remand for further proceedings consistent with this opinion.

BACKGROUND[1]

**A. Overview**

        Plaintiff Emily Franzen has at least a high school education, is able to communicate

in English, and has past work experience as a receptionist, veterinary assistant, groomer

and cashier.  Franzen has not engaged in substantial gainful activity since December 15,

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #18.

2016, the same date as her alleged onset disability date, although she did work on a very limited, part-time basis after that date.

Franzen applied for social security disability benefits on May 3, 2017, with a date last insured of December 31, 2021.  With a birth date of September 17, 1980, Franzen was 36 years old on the alleged disability onset date, defining her as a "younger individual." 20 C.F.R. § 404.1563.  Franzen claimed disability based on herniated disks with chronic significant pain; lumbar radiculopathy, chronic; lumbar facet joint pain; SI joint dysfunction; sitting disability; unable to walk without a cane; depression; anxiety; and stage 1 kidney cancer.  (AR 94-95.)

### B.  ALJ Decision

ALJ Ellis held a video hearing on May 14, 2019, at which Franzen appeared personally and by counsel.  On July 3, 2019, the ALJ issued an opinion finding that Franzen had not been under a disability within the meaning of the Social Security Act from her alleged disability onset date through the date of the decision.  The ALJ first determined that Franzen had the following severe impairments:  "spine disorders, phlebitis and thrombophlebitis, anxiety, and depression."  (AR 31.)  The ALJ considered other impairments, including Franzen's history of kidney cancer, migraines, supraventricular tachycardia, sacroiliac joint dysfunction and obesity, but concluded that these impairments were not severe, which Franzen does not challenge on appeal.  (AR 31-32.)

In this section of the opinion, however, the ALJ also considered Franzen's claim that she needed to use a walker or a cane.  The ALJ observed that "while she brought a walker or cane to medical appointments, nothing in the medical evidence of record suggested an

assistive device was ever prescribed and there is no indication she was considered a fall risk or had any balance problems Exhibits (13F/4; 28F/12)." (AR 32.) The ALJ also explained, "[i]n fact, contrary to her assertions that she has problems with balance and walking, healthcare workers often observed she was able to ambulate with a normal gait (Exhibits 1F/8; 12F/7; 13F/7; 16F/6; 21F/35; 23F/11)." (*Id.*)

Next, the ALJ considered whether Franzen's impairments or combination of impairments met or medically equaled various mental impairments Listings, concluding that they did not. (AR 32-35.) Here, too, Franzen does not challenge the ALJ's conclusion.

At step four, the ALJ determined that even with these impairments, Franzen had the residual functional capacity ("RFC") to perform light work, but with the following additional exertional limitations: can frequently climb ramps and stairs; can occasionally climb ladders, ropes, and scaffolding; can frequently balance; can occasionally stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extreme cold, vibration, unprotected heights, moving mechanical parts and working or walking on uneven terrain; cannot drive as a part of her job. (AR 35.) The ALJ also included nonexertional restrictions that Franzen can have only brief, superficial interaction with the public and will be off-task up to ten percent of the day. (*Id.*)[2]

In crafting the RFC, the ALJ considered Franzen's and her husband's testimony during the hearing that "she has difficulty with sitting, standing, walking, lifting, carrying, bending, squatting, stooping, crouching, twisting, kneeling, climbing stairs, reaching, using

---

[2] Plaintiff does not challenge the nonexertional restrictions or the ALJ's treatment of her mental health limitations more generally, and, therefore, the court focuses its review of the ALJ's opinion on her treatment of physical impairments and limitations.

her hands, concentration, completing tasks, getting along with others, and handling stress and changes in routine."  (AR 36.)  The ALJ also considered her testimony that she "requires the use of an assistive device" and that she "has problems caring for her personal needs."  (*Id.*)  The ALJ, however, concluded that these statements were "not entirely consistent with the medical evidence and other evidence in the record."  (*Id.*)

In support of her decision to discount Franzen's testimony, the ALJ pointed to her ability to "spend time with family and friends, complete jigsaw puzzles, read, operate a computer, perform household chores, shop for groceries, and work part-time."  (AR 36.)  The ALJ also considered the effects of plaintiff's August 2017 lumbar laminectomy with fusion and concluded that any post-surgery limitations were designed to be "temporary, as they are not reflected elsewhere in subsequent medical records."  (AR 37.)  The ALJ also discounted her post-surgery claims of pain based on (1) the fact that "she has sought very little treatment post-surgery"; and (2) initial post-surgery medical records indicating that she was "very pleased with her progress," while also noting that "[d]uring a six-month follow-up visit, she complained of sacroiliac joint pain, right leg weakness, and muscle spasms."  (*Id.*)

The ALJ also discussed specialist Timothy C. Romang, M.D.'s July 2018 observation that he was unable to "clearly identify any specific pain generators," while also noting that she is "using a walker, seemed uncomfortable with transitional movements, and spent the majority of her prior visit the month before lying supine with a pillow underneath her knees," but that she "otherwise displayed no overt pain behavior."  (AR 37.)  As for the walker specifically, the ALJ again reiterated her view that "none of her healthcare providers

have noted she was a fall risk, had any balance problems, or prescribed an assistive device," citing the same records as noted above. (*Id.*) The ALJ also noted that Franzen was scheduled for a trial spinal cord stimulator implantation, but noted that it had been twice postponed, apparently questioning whether it was actually going to go forward.

Next, the ALJ considered the opinion testimony. First, with respect to the state agency medical consultants, the ALJ found that the opinion of LaVerne Barnes, D.O., provided at the reconsideration level, "supports the finding that the claimant is capable of performing light work activity with postural and environmental restrictions that essentially mirror the ones described above." (AR 39.) The ALJ also determined that "[e]vidence subsequently entered into the record also indicated the claimant's back pain, extremity weakness, and psychological symptoms have improved and only required conservative treatment." (*Id.*)

The ALJ then reviewed the April 2019 opinion of Wendy Hanneman, M.D., opining that Franzen is "unable to bend, twist, reach overhead, sit/stand/walk more than two hours, or lift more than ten pounds, needs the ability to shift positions at will, must lie down more than six hours a day, [and] would be absent from work three or more times per month," but implicitly discredited it on the basis that "she has no significant personal knowledge of the claimant's medical functioning." (AR 40.) The ALJ also discounted Dr. Romang's July 2018 statement that Franzen used a walker and that she "appeared uncomfortable with transitional movements," on the basis that he was "unable to 'clearly identify any specific pain generators,' she did not display overt pain behavior, neurologic findings were relatively

normal, and a diagnostic scan showed intact surgical changes with no significant central or foraminal narrowing." (*Id.*)

The ALJ next determined, with the assistance of a vocational expert ("VE"), that Franzen could not perform her past relevant work because it all required more than brief contact with the public. The ALJ, however, concluded that Franzen could perform the jobs of marking clerk, routing clerk and mail sorter, all of which existed in the national economy in significant numbers. (AR 42.) As such, the ALJ concluded that plaintiff was not under a disability from December 15, 2016, through the date of the decision.

## OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled. Specifically, findings of fact are "conclusive," so long as they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Provided the Commissioner's findings under § 405(g) are supported by such "substantial evidence," therefore, this court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Similarly, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).

At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). Thus, the court must review plaintiff's challenge to the ALJ's RFC determination under this deferential, yet discerning, standard.

## I. Use of a Walker

As noted above, Franzen raises three challenges to the ALJ's RFC determination. *First*, she challenges the ALJ's rejection of evidence in the record that Franzen's use of a walker is medically necessary. As described above, the ALJ concluded that the walker was not actually prescribed. In support of this conclusion, the ALJ cited two documents. The first is a May 7, 2017, progress note from Wendy Hanneman, M.D., noting that Franzen "[w]alks with a cane." (AR 805.) As an initial observation, this record predated her surgery and the inpatient rehabilitation services that resulted in her being provided with a walker. Regardless, there is nothing in this specific record to support the ALJ's finding that the walker (or other assistive device) was not prescribed or otherwise medically unnecessary. The ALJ also cites to a July 26, 2018, medical record, in which Dr. Romang noted that "[s]he ambulates with a wheeled walker equipped with handbrakes and a seat." (AR 1205.) He also noted that Franzen "appears uncomfortable with transition movements," although "[s]he otherwise does not display any outward pain behavior or overt symptom magnification during today's evaluation." (*Id.*) Dr. Romang also mentioned that "[w]hen I saw her last, I was not able to clearly identify any specific pain generators," and also noted that a recent MRI revealed that her surgery site appeared to be stable with no

complications.  (*Id.*)  Still, Dr. Romang noted that the straight let raise elicited back pain and that her "[l]umbar flexibility is severely restricted in all plains."  (*Id.*)  Here, too, there is nothing about this report that indicates that the walker was not medically necessary or otherwise calls into question her complaints of pain.  Indeed, Dr. Romang specifically noted that Franzen did not display "over symptom magnification," which the court agrees with plaintiff indicates that Dr. Romang concluded she was not malingering.  (*Id.*)  Instead, the main takeaway from this medical record is that the source of her post-surgery pain was unclear, but there is nothing to call it into question or otherwise undermine her need of a walker.

As plaintiff points out, however, there is a medical record, namely a treatment encounter note by a physical therapist at the inpatient treatment center plaintiff attended post-surgery for two weeks, that states that "[r]esident will also need a walker at home," and that the therapist both informed Franzen that she could rent a walker through the Good News Project and also agreed to call Franzen's "insurance company per her request to see if they will purchase a walker for her."  (AR 866; *see also* AR 877 (describing for discharge "to use walker basket").)  The Commissioner argues that this record "reads not as a prescription for a walker, but Plaintiff reporting what equipment she thought would be helpful to use at home."  (Def.'s Opp'n (dkt. #26) 8.)  The court does not read the record that way; instead, the record clearly states that Franzen "will also need a walker at home," and the reference to "per her request" was that the therapist contact her insurance company to see if it would cover the expense, not that Franzen demanded the use of a walker when it was not medically necessary.

8

Plaintiff also points to medical records noting her use of a walker.  (Pl.'s Opening Br. (dkt. #22) 8 (citing numerous pages of the record).)  While the court agrees with the Commissioner that these records are not "prescriptions" for a walker, none of these records call into question her need for one.  Indeed, as described below, a number of these records note issues with her gait in connection with observing her use of a walker.  (*See, e.g.*, AR 1171 ("She has a very slow stepped gait and is ambulating with a walker," dated March 1, 2018).)  In other words, none of her health care providers state or imply that she did not need to use a walker.  Moreover, it would be illogical to require a new or renewed prescription for a walker where she had access to one.  This is not a medication where she would need a healthcare provider to renew the prescription.

In further support of her rejection that Franzen required a walker, the ALJ also cited to records where "healthcare workers often observed she was able to ambulate with a normal gait (Exhibits 1F/8; 12F/7; 13F/7; 16F/6; 21F/35; 23F/11)."  (AR 32.)  While half of these records were before surgery, the court agrees that they all contain references to a "normal gait."  The ALJ, however, failed to recognize numerous records -- more numerous than those cited by the ALJ -- where health care providers noted issues with her gait and stability concerns.  (*See* AR 1171 ("She has a very slow stepped gait and is ambulating with a walker," dated March 1, 2018); AR 1200 ("She presents today requiring use of a walker for mobility," dated June 8, 2018); AR 1075 ("Antalgic gait, she needs a walker to walk weakness of the right lower extremity," dated July 2, 2018); *see also* AR 1053; AR 1091; AR 1102; AR 1109; AR 1159.)  By only citing the records that support the ALJ's finding that her gait was normal and, therefore, the use of a walker was not medically necessary,

the ALJ impermissibly cherry picked from the record.  *See Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) ("An ALJ 'cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding.'" (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)).

The ALJ also noted that "none of her healthcare providers have noted she was a fall risk [or] had any balance problems."  (AR 37.)  This statement is incorrect.  In a record dated August 13, 2018, Renae Lenzner, R.N., responded "YES Fall in last 30 days, right leg gives out on her," to the question "Is the Patient a Fall Risk?"  (AR 1082.)  The Commissioner argues that this record simply recorded Franzen's account rather than was a medical finding, but that is not obvious from the record and, more importantly, the ALJ did not provide this explanation in stating that there was no record noting Franzen was a fall risk.

The court agrees with plaintiff that the ALJ's consideration of the medical record to conclude that Franzen's use of a walker was not medically necessary, and, therefore, did not need to be included in her RFC is deeply flawed.  As such, remand is warranted on this basis alone.

## II. Treatment of State Agency Reviewers

Franzen also challenges the ALJ's reliance on the opinion of a state agency medical consultant's opinion.  Specifically, she challenges reliance on that opinion given that it was provided in February 2018, and, therefore, pre-dates her subsequent diagnosis of "post-laminectomy syndrome."  (AR 1094.)  The court credits the Commissioner's argument that post-laminectomy syndrome is not the sort of new diagnosis that would require a new

medical record review; instead, the diagnosis simply signals that Franzen continued to experience pain post-surgery.

More to the point, Franzen also challenges the ALJ's discounting of her complaints of debilitating low back pain even after surgical intervention in part because she "sought very little treatment post-surgery." (AR 37.)  Here, too, the court agrees with plaintiff that this is not accurate, in light of the voluminous medical records describing extensive attempts at treatment for her ongoing post-surgery pain, including "bilateral sacroiliac joint injections, multiple rounds of medial branch blocks and ablations, ongoing aquatic therapy, multiple prescription medications, and regular treatment with a neuropsychologist for chronic pain, with approval and scheduling of a spinal cord stimulator." (Pl.'s Opening Br. (dkt. #22) 9 (citing AR 1041-1255).)

The court need not fully resolve this challenge in light of the court's finding that remand was warranted on the ALJ's treatment of the walker requirement, although the court notes that on remand, the review should also include reconsideration of Franzen's post-surgery subjective complaints of pain and her efforts to address those ongoing issues.

## III. Treatment of Subjective Statements

Finally, Franzen also challenges the ALJ's treatment of her subjective statements. This challenge covers some overlapping ground of her other two challenges, but also raises concerns about the ALJ's finding that Franzen's ability to engage in "a wide range of demanding activities" undermines her description of her limitations.  (AR 36.)  In support, the ALJ cites such "demanding" activities as spending time with family and friends, completing puzzles, reading, operating a computer, performing household chores, shopping

for groceries and working part time.  A number of these activities could not be characterized as physically demanding, but, more to the point, this account fails to acknowledge her limitations in performing even these activities, including that her part-time work consists of working up to two hours per two-week pay period managing the social media account of a veterinary clinic, and that her work at home consists of helping with activities that are waist high, including loading or unloading only the top rack of the dishwasher.  (AR 62, 64.)

Stepping back, this challenge also calls into question the ALJ's treatment of subjective complaints of pain where there is a lack of objective medical evidence.  The ALJ's approach appears contrary to the regulations which provide that "we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."  SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017); *see also Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) ("[T]he ALJ inappropriately rested his credibility determination too heavily on the absence of objective support for Pierce's complaints without digging more deeply.").

Again, on remand, the ALJ may reexamine Franzen's subjective statements about her pain and limitations in crafting an appropriate RFC.  For these reasons, the court will remand this case for further proceedings.  On remand, the court recommends that the Appeals Council reassign this case to a new ALJ.

ORDER

IT IS ORDERED that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying plaintiff Emily M. Franzen's application for social security disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk's office is directed to enter judgment in plaintiff's favor and close this case.

Entered this 2nd day of March, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

13